# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARIA TERESA VIVES, M.D.,**              **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                 **No.  11-2080**

**CHILDREN'S HOSPITAL, INC.,**             **SECTION "E"**
    **Defendant**

## ORDER & REASONS

Before the Court is Defendant Children's Hospital, Inc.'s ("Children's") motion for summary judgment, which Plaintiff Maria Teresa Vives ("Dr. Vives") opposes.  For the following reasons the motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Dr. Vives, a Hispanic female of Mexican origin, is a neuro-opthalmologist who has worked at Children's since 2000.  She first had contact with Dr. George Ellis, the Director of the Children's Ophthalmology Department, in 1993 during her pediatric ophthalmology rotation at Children's while in residency training.  After she finished her training, Dr. Ellis offered her a position.  At the time she started, Dr. Ellis was her supervisor and they enjoyed a positive working relationship.  Over time, the relationship deteriorated.  The parties dispute the cause.

Dr. Vives asserts the deterioration was caused by discrimination.  Dr. Ellis and Children's assert that it was caused by miscommunications, secretarial and staffing concerns, and other workplace disagreements.  In 2006, Dr. Vives and Dr. Ellis stopped speaking entirely, a situation that continues to the present.  They instead communicate via e-mail and secretarial staff.  At the same time, Children's separated Dr. Vives's practice

from Dr. Ellis's, providing her with a separate office, cost center and budget, and secretarial support.  Dr. Vives now reports directly to Dr. Alan Robson, Children's Medical Director, rather than to Dr. Ellis.

On November 30, 2009, Dr. Vives filed a charge of discrimination with the EEOC, alleging discrimination, retaliation, and harassment based on her gender, religion, race, and national origin.  The EEOC issued a right to sue letter on May 24, 2011.  Dr. Vives filed this suit on November 1, 2011, asserting as claims under Title VII of the Civil Rights Act of 1964 and 1991 that Children's has subjected her to a pattern and practice of discrimination, retaliation, and harassment that forms a hostile work environment based on her gender, race, religion, and national origin.[1]  In particular, Dr. Vives alleges the following events since her hiring:  Residents have been assigned to work and assist Caucasian males for regular duty (taking call), days off, and vacation days, but not her; she has been forced to care for patients during her vacation time because residents have not been assigned to her, and Children's has refused to restore her lost vacation time; she has been denied an opthalmology technician assistant and equipment; she has been provided with unequal office space; she has been denied equal pay and bonuses; and after complaining about being treated differently, she was required to work additional days while on a medical leave of absence.[2]

---

[1]     Plaintiff has abandoned her claim for discrimination based on her religion. R. Doc. No. 118, p. 1.  Accordingly, the Court will not discuss it.

[2]     Dr. Vives's complaint contains a number of other allegations of allegedly unpleasant conduct, but the events either were not complained of to the EEOC or do not rise to the level of a potential discrete act of discrimination.  Instead, these other incidents are, at most, relevant to her claim for a hostile work environment.

2

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.* at 322-23. Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324.

If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325. The nonmoving party must then respond, either by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" or by coming forward with additional evidence. *Celotex*, 477 U.S. at 332-33 & 333 n.3.

"An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000).  All reasonable inferences are drawn in favor of the non-moving party.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.  *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## ANALYSIS

Dr. Vives advances three distinct kinds of claims:  discrimination, hostile work environment, and retaliation.  Her claims for discrimination are time barred, do not rise to the level of an adverse employment action, or fail the burden-shifting test applied to claims under Title VII.  Her claims for retaliation lack evidence sufficient to create a genuine issue whether the complained-of acts were caused by her participation in a protected activity.  Her hostile work environment claims survive summary judgment, however.

4

## I.      Discrimination[3]

Many of Dr. Vives's claims of alleged discrimination are time barred.  She filled out her EEOC intake questionnaire and charge on November 30, 2009, meaning that only claims relating discrete acts which occurred on or after February 3, 2009, are timely brought.[4]  Her claim of discriminatory office space assignment is therefore time barred, as she received the space in 2006 and knew of Dr. Ellis's apparently larger space at that time. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (holding that the limitations period begins running once the plaintiff knows or should have known of the unlawful employment action).  Her claim for discriminatory pay, to the extent it is based on actual salary and bonus, is also timed barred.[5]  As counsel admitted during the last status conference with the Court, and as revealed by an examination of the declarations, Dr. Vives actually made more than Dr. Ellis in 2008, and only a de minimus amount less than him in 2009.[6]  Accordingly, the limitations period began to run on Dr. Vives's discriminatory

---

[3]     Dr. Vives is inconsistent about whether she continues to assert a claim for discrimination.  At times her papers insist this is a hostile work environment case, but as she appears to maintain the claim for discrete acts of discrimination, the Court will address it.

[4]     Louisiana is a so-called "deferral state," meaning that an EEOC charge must be filed within 300 days, rather than 180, of the allegedly discriminatory act.  *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988); *Conner v. La. Dep't of Health & Hosp.*, 247 F. App'x 480, 481 (5th Cir. 2007).

[5]     The Court will separately address Dr. Vives's contention that the denial of a technician to her has resulted in lower compensation.

[6]     If supplemental compensation as the result of an IRS Retirement Plan, for which there is no evidence that Dr. Vives or anyone hired at the time she was hired could have been eligible, is excluded, then Dr. Vives made more than Dr. Ellis even in 2009.

compensation claim based on her actual compensation once Dr. Vives was no longer receiving actual compensation lower than the comparator, Dr. Ellis, she selected.  *See Smith v. Shinseki*, 2010 WL 3909166, at *1 (E.D. La. Sept. 27, 2010) ("[Plaintiff] urges, however, that the Lily Ledbetter Fair Pay Act of 2009 ("Fair Pay Act") [which provides for a reach-back of two years on discriminatory compensation claims] renders his notice to the EEOC timely. . . [T]he Court disagrees.  The disparity in wages received by Plaintiff during the time he worked [at lower compensation] ended when he returned to [higher compensation].  Stated differently, the alleged compensation discrimination suffered by Plaintiff during his tenure [at lower compensation] had no continuing effect beyond June 2008.  Accordingly, the Fair Pay Act offers no relief as to Plaintiff's discriminatory pay claim.").

Dr. Vives's claim that she has been discriminatorily denied an ophthalmology technician is time barred as well.  At the latest, she complained to Children's Chief Financial Officer that male physicians were allowed to have a technician while she was not on November 24, 2008—or months before the February 3, 2009, cutoff for her claims.  Accordingly, any claims for discriminatory compensation based on Children's failure to provide her with a technician is also time barred.

Several of Dr. Vives's claims are timely, however.[7]  As Dr. Vives offers no direct

---

[7]    Children's asserts that a number of Dr. Vives's timely claims should nonetheless be dismissed as outside the scope of the EEOC charge.  R. Doc. No. 71-1, pp. 14–15.  But the "scope of an EEOC charge is to be construed liberally," and courts consider "not the scope of the administrative charge itself," but "the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Mack v. John L. Wortham & Son, L.P.*, 2013 WL 4758052, at *9 (5th Cir. Sept. 5, 2013) (quoting *Pacheo v. Mineta*, 448 F.3d 783, 788 (5th Cir.

evidence of discrimination, her claims must be analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). She must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) she is qualified for the work at issue, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees outside of her protected class. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Once a plaintiff makes this prima facie showing, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action. *Id.* The employer satisfies this burden of production by producing evidence that "taking as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If the employer produces such evidence, then the inference of discrimination arising out of plaintiff's prima facie case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff then has the burden of producing evidence sufficient to show that the employer's proffered reason is pretextual or, while true, the plaintiff's protected characteristic was nevertheless a "motivating factor" in the employer's decision. *Rachid*, 376 F.3d at 312.

Dr. Vives cannot establish a prima facie case of discrimination based on any of her timely claims, which are that: (1) she was required to come in while on vacation to see a patient on January 5, 2009, and her vacation was not restored; (2) she was placed on call

---

2006)). Under this standard, the events Children's objects to are within the scope of Dr. Vives's EEOC charge.

without being notified in October 2009, though she did not work those call dates; (3) she was scheduled for call while on Family Medical Leave Act ("FMLA") leave and forced to answer calls regarding patient care; (4) she was asked to make up the calls days she missed while out on FMLA leave, though she was not required to do so; (5) she has been forced to take call without a resident; (6) she was not reimbursed after being unable to attend a scheduled conference; (7) she was allegedly reprimanded and accused of falsifying information by Dr. Robson; and (8) she was harassed and treated rudely by support staff.

For purposes of a discrimination claim, only "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensation" can be an adverse employment action—"an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 855 (S.D. Tex. 2011). Although reprimands may qualify, they must result in more than just an investigation or criticism. *Benningfield v. City of Houston*, 157 F.3d 369, 376–77 (5th Cir. 1998).

Under this standard, all of Dr. Vives's claims other than that she has been forced to take call without a resident fail to rise to the level of an adverse employment action. The two actions that come closest to meeting this standard—the failure to restore vacation time and the statements of Dr. Robson—are still insufficient. "The courts that have considered the issue have routinely found that the denial of short term vacation time is not an adverse employment action." *Beltran v. Univ. of Tex. Health Sci. Ctr.*, 837 F. Supp. 2d 635, 643 (S.D. Tex. 2011). And although the Court is arguably required to classify the statements by Dr. Robson as a reprimand for purposes of summary judgment, Dr. Vives has come forward

8

with no evidence that the alleged reprimand resulted in the revocation of any privileges or benefits or disciplinary action of any variety.  Accordingly, it is not an adverse employment action.  *Tate v. La. Dep't of Trans. & Dev.*, 2013 WL 796015, at \*12 (E.D. La. Mar. 4, 2013) ("False accusations, criticism, and investigations are not adverse employment actions. Plaintiff further alleges that as a result of the investigations she was humiliated and that disciplinary action was recommended. The Fifth Circuit has made clear, however, that even the capacity of an action to stigmatize an employee is inadequate to make it an adverse employment action." (internal quotation marks omitted)).

Dr. Vives being erroneously placed on call while she was on leave (but not having to take any such call) is not an adverse employment action; as she herself admits the only effect of this was "keeping [her] on [her] tip toes, you know."[8]  The fact that Dr. Vives was forced to answer calls concerning patient care—but not to actually go in to provide care—while out on FMLA leave is similarly not an adverse employment action under the "ultimately employment decisions" test.  Nor, obviously, is the fact she was asked—but not required—to make up the call days she missed while out on FMLA leave.  Even more obviously, her allegedly rude treatment by support staff fails to qualify.  Finally, Dr. Vives's inability to attend a conference or the failure to reimburse her for it does not rise to the level of an adverse employment action either.  *Escalante v. Holder*, 2011 WL 1528472, at \*10 (W.D. Tex. 2011) ("[D]enial of an individual's request to attend a training conference is not an ultimate employment decision, and thus, is not an adverse employment action.").

Assuming without deciding that being forced to take call without resident support

---

[8]        R. Doc. No. 71-12, p. 71.

sufficiently affects Dr. Vives's "job duties" to qualify as an adverse employment action, and assuming without deciding that Dr. Vives has identified appropriate comparators, the burden under *McDonnell-Douglas* shifts to Children's to produce a non-discriminatory explanation for the disparate treatment.[9]  It has done so.  Beginning with her hiring, Dr. Vives participated in the training of LSU Health Sciences Center ("LSUHSC") residents. On Feburary 27, 2008, she notified the residency program director at LSUHSC that she would no longer participate in training residents.[10]  It is the uncontradicted testimony that LSUHSC's policy permits doctors to take advantage of residents for purposes of call only if the doctor participates in the residency program by teaching.[11]  On this central point, the evidence does not conflict.[12]  As Children's has come forward with a legitimate, non-discriminatory justification for the allegedly adverse employment action, the burden shifts to Dr. Vives to show that Children's explanation is pretextual.  And she has come forward with absolutely no evidence that links the decision she must take call without residents to her gender, race, or nation of origin.

The incidents of mistreatment that Dr. Vives alleges and that are not time barred either do not qualify as adverse employment actions or do not survive the *McDonnell-*

---

[9]    There is no dispute that Dr. Vives is a member of protected classes and that she is qualified for her job.  To the extent Dr. Vives's complaint alleges incidents of mistreatment similar to those discussed above, they are either time barred or not adverse employment actions.

[10]    R. Doc. No. 71-23; 71-15, p. 13.

[11]    R. Doc. No. 71-15, pp. 83–84.

[12]    Dr. Vives asserts that various declarations and depositions conflict concerning who removed residents from her call schedule, but she points to no evidence that it is not, in fact, LSUHSC policy that residents take call only with (or for) teaching physicians.

*Douglas* burden shifting framework.  Accordingly. Dr. Vives claim for discrimination under Title VII must fail.

## II. Retaliation

In order to maintain a claim for retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer took materially adverse action against her, and (3) there is a causal connection between the protected activity and the adverse action. *Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 754 (5th Cir. 2005).  Unlike in a claim for discrimination under Title VII, the adverse action necessary to support a claim for retaliation is not limited to ultimate employment decisions.  Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  But "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id.*  Title VII "does not set forth a general civility code for the American workplace," so the requirement of "*material* adversity" is required because "it is important to separate significant from trivial harms."  *Id.* (emphasis in original).  While the standard for an adverse employment action is lower, the standard for causation is higher.  In order to maintain a claim for retaliation, the plaintiff must show that "her protected activity was a but-for cause of the alleged adverse employment action by the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Dr. Vives claims that she has suffered a number of adverse employment actions in

retaliation for engaging in protected activity, but she only provides argument and evidence concerning the issue of causation for two.   In its entirety, her argument concerning causation for her retaliation claim is as follows:

> Clearly, based on the foregoing arguments, Vives has established a causal connection between the informal complaints of protective activity and the post EEOC filing protected activity.   In 2008, Dr. Vives had many complaints of discriminatory conditions through November 2008.   Then in 2009, she complained about Dr. Ellis preventing residents to see consults that he perceived were for Dr. Vives.   Then the ultimate adverse employment action occurred effective February 15, 2009 when the residents were removed.   Then despite inquiring to Greg Fiern three times in 2008 about the technician and a qualified technician applying in March the very month of the inquiry, the qualified applicant was not interviewed nor was Dr. Vives told about the applicant.   Then, while Dr. Vives' budget still has funding for a technician, after Dr. Vives filed her EEOC charge in 2010, in 2011, the technician was cancelled, but the approving the technician in budget was used as rouse to cover up the retaliation.[13]

Dr. Vives therefore advances a causal connection for only three incidents of alleged retaliation:  The failure to advise of her a qualified applicant for a technician position in 2008; the removal of resident support from her in 2009; and the removal of the budget appropriation for a technician in 2011.   She fails to provide evidence in support for causation for any.

Even assuming it qualifies under the relaxed adverse employment action standard applicable to retaliation claims, Dr. Vives does not link the alleged failure to advise her of a qualified applicant for her technician position to any protected activity.   Her complaints concerning race and gender discrimination to Children's CEO in 2004 are too remote in time to support an inference of causation.   "Temporal proximity between [protected activity] and the alleged adverse employment actions"—and this is the only evidence of

---

[13]      R. Doc. No. 108, p. 55.  Errors in original.

causation Dr. Vives offers—"only can prove the causation element of his prima facie case when the protected act and the adverse employment action are 'very close' in time," *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007).  A twenty-four month lapse in time, far shorter than the four year gap in this case, defeats any inference of causation, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).  Her complaint to Children's CFO in 2008 about the alleged denial to her of a technician was not protected activity, because she failed to allege the denial was on account of discrimination against her on account of her gender, race, or nation of origin.  *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008).  And although Dr. Vives did engage in protected activity before the alleged removal of the technician from her budget in 2011, again, the protected activity was too remote in time to support an inference of causation.  *Breeden*, 532 U.S. at 273–74.

This leaves the removal of residents as the only alleged retaliation engaged in sufficiently close in time to participation in protected activity (the 2009 letters to Drs. Robson, Valerie, and Ellis) to allow an inference of causation.  But causation for a retaliation claim requires the plaintiff to show "but for" causation, and Dr. Vives has adduced no evidence that the policy pursuant to which the residents were removed from her—LSUHSC's policy that residents only provide call coverage the like to doctors participating in the training program—is not in fact the policy.  Therefore, the decision to remove resident support from her was at, at least in part, a product of her freely made decision to stop participating in teaching.  So even if the decision to remove residents from her was in part motivated by a desire to retaliate against her for engaging in protected

activity, the retaliation has, at best, a mixed motive.  That is insufficient.  *Nassar*, 133 S. Ct. at 2534.

### III.   Hostile Work Environment

Unlike a claim for discrimination, a hostile work environment claim under Title VII arises "where harassment occurred, but no tangible employment action was taken."  *Reine v. Honeywell, Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010).  In order to maintain such a claim, the plaintiff must show that (1) she belonged to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action.  *Le Maire v. La. Dept' of Trans. & Dev.*, 480 F.3d 383, 393 (5th Cir. 2007).  But when the harassment is allegedly committed by a supervisor, the plaintiff need not satisfy the fifth element.  *Celestine v. Petroleos de Venezuella*, 266 F.3d 343, 353 (5th Cir. 2001).

Unlike a Title VII claim for discrimination, a hostile work environment claim is based on the "cumulative effect of individual acts."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  "The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.* Accordingly, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.

"In determining whether an actionable hostile work environment claim exists,"

courts "look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 116. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.*

There is no doubt that Dr. Vives belongs to a protected class, and at least for purposes of summary judgment, there is no doubt that she has been subjected to unwelcome acts that a reasonable jury could conclude amount to harassment. It is less clear whether there is sufficient evidence that the harassment was sufficiently severe and pervasive as to affect a term or condition of employment and whether there is sufficient evidence the harassment was based on Dr. Vives's gender, race, or nation of origin. As Dr. Vives alleges putatively harassing acts after February 3, 2009, she may sweep back in all of the harassment that she alleges has occurred during her time at Children's. It is possible that a jury could conclude the sustained pattern of conduct she alleges constitutes severe and pervasive harassment.[14] It is also possible a jury could conclude this pattern of harassment is on account of one of Dr. Vives's protected characteristics. And as at least some of this harassment occurred at the hands of Dr. Ellis during the time Dr. Ellis was her

---

[14]  While Children's is right to state that harassment for purposes of a hostile work environment claim cannot be mere discrete acts of discrimination, but must be tantamount to intimidation, ridicule, and insults, it cites no case that stands for the proposition the intimidation, ridicule, and insults must explicitly reference the protected characteristic (a racial or sexual epithet, for example). The intimidation, ridicule, and insults—and Dr. Vives alleges she has been subjected to these—must simply be based on the protected characteristic.

supervisor (and as some of the harassment afterwards allegedly occurred at the hands of Dr. Robson, who is now her supervisor), Dr. Vives need not have produced evidence on the fifth element of her hostile work environment claim.[15]  There is sufficient evidence for Dr. Vives to proceed to a jury on this claim, though she must be mindful that the Court's ruling on summary judgment does not foreclose the possibility of a successful Rule 50 motion depending on the evidence she presents at trial.[16]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment on Dr. Vives's claims for discrimination and retaliation and **DENIES** summary judgment on Dr. Vives's hostile work environment.

**New Orleans, Louisiana, this 14th day of October, 2013.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[15]   It is unclear whether Children's attempts to claim benefit of the "same actor" presumption on Dr. Vives's hostile work environment claim in addition to on Dr. Vives's discrimination claim.  If so, the presumption does not apply.  *Alzuraqi v. Group 1 Automotive, Inc.*, 921 F. Supp. 2d 648, 662 (N.D. Tex. 2013) ("The court declines to apply the "same actor inference" rule to Plaintiff's hostile work environment claims because Group 1 does not point to, and the court was unable to find, any case in this circuit that has applied the inference in a case involving a hostile work environment claim. ").  To the extent Dr. Vives wishes to base her claim on acts by others than her supervisors, however, she must adduce evidence in support of this element at trial.

[16]   As Dr. Vives's claims regarding her compensation have not survived summary judgment, the Court notes that Dr. Vives's recovery is limited to $300,000 by the cap imposed by 42 U.S.C. § 1981a.  *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011).

16